IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOEL HOOD, *individually and on behalf of all others similarly situated*, | 2:24-CV-00666-CCW |
| Plaintiffs, | |
| v. | |
| EDUCATIONAL COMPUTER SYSTEMS, INC., | |
| Defendant. | |

## OPINION

Before the Court is Defendant Educational Computer System, Inc.'s ("ECSI") Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("CAC"). ECF No. 32. For the reasons set forth below, the Court will grant the Motion in part, and deny it in part.

## I.    Background

This case arises from a cyberattack on ECSI's website that compromised Plaintiffs' sensitive personal and financial information. The relevant factual allegations in the CAC, taken as true, are as follows.

ECSI is a financial management services company that serves client colleges and universities. ECF No. 30 ¶ 2. In particular, ECSI provides its clients with tax document services, past-due accounts receivable management, and campus-based student loan servicing, among other services. *Id.* One service provided by ECSI is its "TaxSelect" service, through which it generates tax forms for its university clients' students. *Id.* ¶ 20. ECSI has over 1,000 institutional clients that use TaxSelect, and through that service it creates over six million tax documents annually. *Id.* ¶ 28. To provide TaxSelect, ECSI collects, processes, and stores students' personal identifying

information ("PII") such as names, Social Security numbers, addresses, and other sensitive financial information.  *Id.* ¶¶ 3, 20.  ECSI gathers the necessary student and borrower PII from its university clients directly and from students and borrowers who submit tax form W-9S to ECSI.  *Id.* ¶¶ 23–24.  It then uses that information to generate tax form 1098-Es and 1098-Ts for its clients' students and makes those forms available for students on its website.  *Id.* ¶¶ 20–23.

Beginning on October 29, 2023, unknown cybercriminals took advantage of a design flaw on ECSI's website that allowed them to access student and borrower tax form 1098-Es and 1098-Ts which contained sensitive student and borrower PII (the "Data Breach").  *Id.* ¶ 6.  Specifically, these cybercriminals exploited ECSI's website's "guest tax search functionality," which allowed them to gain unauthorized access to individuals' tax forms by supplying basic personal information available online or on the dark web,[1] without needing to log into an account, confirm their identities, or satisfy any data security measures.  *Id.* ¶¶ 5, 34–38.

ECSI became aware of the Data Breach on or about February 12, 2024, when it noticed an "unusually high volume" of attempts to access its guest tax search function.  *Id.* ¶ 39.  ECSI thereafter removed the guest tax search function from its website.  *Id.*  On April 19, 2024, ECSI issued notice to individuals whose PII had been compromised in the Data Breach.  *Id.* ¶¶ 4 n.4, 41.  That notice acknowledged that cybercriminals intentionally and successfully accessed ECSI's website in an attack designed to obtain sensitive student and borrower PII.  *Id.* ¶ 42.  As of the filing of the CAC, ECSI had not reported the total number of individuals impacted by the Data Breach, but the number appears to be substantial and is likely in the hundreds of thousands.  *See id.* ¶ 43.

---

[1] The dark web "is a portion of the Internet that is intentionally hidden from search engines and requires the use of an anonymizing browser to be accessed.  It is most widely used as an underground black market where individuals sell illegal products like . . .  sensitive stolen data that can be used to commit identity theft or fraud."  *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 150 (3d Cir. 2022).

Plaintiffs are five current or former students at universities and colleges that used ECSI's services.  *See id.* ¶¶ 113–15, 121–23, 130–32, 139–41, 148–50.  All five Plaintiffs received a notice from ECSI informing them that their PII had been accessed and obtained by unauthorized individuals in the Data Breach.  *See id.* ¶¶ 116, 124, 133, 142, 151.  Four of the Plaintiffs have since experienced misuse of their PII.  In March 2024, Plaintiffs Nemiri and Bauer were notified that unauthorized tax returns were filed in their names.  *Id.* ¶¶ 125, 134.  Between December 2023 and August 2024, Plaintiff Taylor received notifications of unauthorized credit inquiries and attempts to open accounts using her PII.  *Id.* ¶ 151.  And in January 2024, Plaintiff Golec was notified that her PII had been posted on the dark web.  *Id.* ¶ 143.

Accordingly, Plaintiffs filed the CAC on behalf of themselves and a putative class of similarly situated individuals whose PII was compromised in the Data Breach, seeking to hold ECSI liable for negligence, breach of implied contract, unjust enrichment, and invasion of privacy, and seeking a declaratory judgment that ECSI failed (and continues to fail) to implement adequate data security measures to protect Plaintiffs' and putative class members' PII.  *Id.* ¶¶ 157–221.  Plaintiffs allege that as a result of the Data Breach they have suffered injuries consisting of, among other things:  (a) damage to and diminution in the value of their PII;  (b) loss of value, privacy, and confidentiality of their PII;  (c) the cost of indefinite monitoring and protection of their financial accounts;  (d) violation of their privacy rights;  (e) loss of time;  and (f) failure to receive the benefit of their bargain.  *Id.* ¶¶ 119, 128, 137, 146, 155.

ECSI has moved to dismiss the CAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  ECF Nos. 32, 33.  Plaintiffs filed an Opposition Brief, and ECSI filed a Reply Brief in further support of its Motion.  ECF Nos. 36, 37.  The Motion is thus fully briefed and ripe for resolution.

## II.    Legal Standards

### A.    Rule 12(b)(1) Standard

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge contests subject matter jurisdiction without contesting the facts alleged in the complaint, whereas a factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). "In sum, a facial attack 'contests the sufficiency of the pleadings' . . . 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Constitution Party*, 757 F.3d at 358 (citations omitted). Here, ECSI presents a facial challenge to subject matter jurisdiction because it argues, in relevant part, that the allegations in the CAC do not establish the Plaintiffs' Article III standing. *See* ECF No. 33 at 5–10. As such, in ruling on ECSI's Motion, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Constitution Party*, 757 F.3d at 358 (quoting *In re Schering Plough Corp.*, 678 F.3d 235, 243 (3d Cir. 2012)).

### B.    Rule 12(b)(6) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the

elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

## III.    Legal Analysis

The CAC asserts five claims on behalf of Plaintiffs and all others similarly situated, including state law claims for negligence (First Cause of Action), breach of implied contract (Second Cause of Action), unjust enrichment (Third Cause of Action), invasion of privacy (Fourth

Cause of Action), and a claim for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* (Fifth Cause of Action).[2]  ECF No. 30 ¶¶ 168–221.  ECSI has moved to dismiss the CAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 32.  The Court will first address ECSI's jurisdictional challenge to Plaintiffs' standing under Rule 12(b)(1), and then turn to its 12(b)(6) challenge for failure to state a claim.

### A.    Plaintiffs Have Established Article III Standing

The standing doctrine, in Article III, section 2 of the Constitution, limits the judicial power of the United States to "Cases" and "Controversies."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014).  Thus, federal courts may "resolve only 'a real controversy with real impact on real persons.'"  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Am. Legion v. Am. Humanist Assn.*, 588 U.S. 29, 87 (2019)).  A "real controversy" exists where the plaintiff (1) has suffered an "injury in fact," (2) that is "fairly traceable" to the defendant's challenged conduct, and (3) is "likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  If any of these elements is missing, then there is no case or controversy, and the court lacks jurisdiction over the matter.  *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–62 (1992).  "The party invoking federal jurisdiction bears the burden of establishing [Article III standing]."  *Id.* at 561.  And they must do so "with the manner and degree of evidence required at the successive stages of the litigation."  *Id.*  Accordingly, "at the pleading stage, a complaint need only contain 'general factual allegations of injury resulting from the defendant's conduct . . . for on a motion to dismiss [courts] presum[e] that general allegations embrace those specific facts that

---

[2] The Court has jurisdiction over Plaintiffs' state law claims pursuant to the federal Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the putative class (as defined in the CAC) is a citizen of a different state than ECSI, there are more than 100 members of the putative class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

are necessary to support the claim.'" *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 661 (E.D. Pa. 2015) (quoting *Lujan*, 504 U.S. at 561), *aff'd* 739 F. App'x 91 (3d Cir. 2018).

Here, ECSI challenges whether Plaintiffs have established the first and second elements of Article III standing. ECF No. 33 at 5–10. Specifically, ECSI argues that to the extent that Plaintiffs identify an actual injury, they have failed to allege that such an injury was traceable to the Data Breach. *Id.*; ECF No. 37 at 1–2. ECSI further argues that to the extent Plaintiffs complain of anticipated future injury attributable to the Data Breach, they have failed to allege a sufficiently imminent and concrete harm. *Id.* Plaintiffs respond that they have suffered actual and imminent injuries which are fairly traceable to the Data Breach. ECF No. 36 at 4–10.

### 1. Plaintiffs Have Alleged Plausible Injuries in Fact

While at the motion to dismiss stage the "[i]njury-in-fact element is not Mount Everest," *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (citation omitted), a plaintiff must allege an injury that is "actual or imminent, not conjectural or hypothetical," *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011). "An actual injury is exactly what it sounds like: 'a concrete loss as the result of [the defendant's] actions.'" *Roma v. Prospect Med. Holdings, Inc.*, No. CV 23-3216, 2024 WL 3678984, at *4 (E.D. Pa. Aug. 6, 2024) (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 190 (3d Cir. 2006)). An injury is imminent when it is "certainly impending or there is a substantial risk [*i.e.*, a realistic danger] that the harm will occur." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (quotations omitted). Moreover, a plaintiff's injury must also be concrete and particularized. *Id.* An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1). And an injury is "concrete" if it is "real, and not abstract." *Id.* at 340 (internal quotation marks omitted). Importantly, "[t]he fact that an injury is intangible—that is, it does not

represent a purely physical or monetary harm to the plaintiff—does not prevent it from nonetheless being concrete, as various intangible harms have been 'traditionally recognized as providing a basis for lawsuits in American courts.'" *Clemens*, 48 F.4th at 154 (quoting *TransUnion*, 594 U.S. at 425). At the pleading stage in a putative class action case, the Article III standing inquiry is focused on whether the named plaintiffs have standing. *Id.* at 153 n.4 (citing *Spokeo*, 587 U.S. at 338 n.6).

### a.    Plaintiffs Nemiri, Bauer, and Taylor Have Alleged Actual Injuries

ECSI argues that while Plaintiffs Nemiri, Bauer, Golec, and Taylor have alleged an "actual misuse" of their PII, they cannot establish that such misuse is traceable to the Data Breach. ECF No. 33 at 5–7. ECSI thus appears to concede that Plaintiffs Nemiri, Bauer, Golec, and Taylor have alleged actual injuries in fact. The Court agrees with respect to Plaintiffs Nemiri, Bauer, and Taylor. Plaintiffs Nemiri and Bauer had unauthorized tax returns filed in their name, ECF No. 30 ¶¶ 125, 134, and Plaintiff Taylor has experienced unauthorized credit inquiries and attempts to open accounts using her PII, *id.* ¶ 152. These are particularized and concrete injuries that are sufficient to establish standing. *See In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742, at *8–9 (D.N.J. Dec. 16, 2021) (finding attempts to book tickets online and open false accounts using plaintiffs' PII constituted actual injuries); *Roma*, 2024 WL 3678984, at *6 (finding use of plaintiffs' PII to make fraudulent charges and procure car and credit card loans were "actual identity theft injuries"). Plaintiff Golec, however, has only alleged that her PII was posted on the dark web, ECF No. 30 ¶ 143, and Plaintiff Hood has only alleged that he received notice that "his PII had been accessed and obtained by unauthorized individuals in the Data Breach," *Id.* ¶ 116. These allegations do not establish that Plaintiffs Golec and Hood have suffered an actual injury. *See Clemens*, 48 F.4th at 152 (explaining

that in the data breach context, "mere access and publication do not cause inherent harm to the victim"). But as explained below, this is not fatal to Plaintiff Golec and Hood's standing.

### b.    All Five Named Plaintiffs Have Alleged an Imminent Injury

ECSI argues that Plaintiffs' theory that the Data Breach subjected them to an increased risk of future harm from fraud and identity theft is insufficient to convey standing. ECF No. 33 at 7–10. Specifically, ECSI contends that Plaintiffs fail to show that the risk of future harm is sufficiently "imminent" to constitute an injury in fact, and therefore Plaintiffs' efforts to mitigate the effects of the Data Breach and their accompanying emotional distress are non-cognizable. *Id.* Plaintiffs argue that they have plausibly alleged an imminent and substantial risk of identity theft due to the Data Breach that is sufficient to convey standing. ECF No. 36 at 5–8.

In *Clemens*, the United States Court of Appeals for the Third Circuit explained that in the data breach context, plaintiffs need not wait until their PII has actually been misused to file suit. 48 F.4th at 152. Rather, such plaintiffs have standing to sue where the risk of identity theft is sufficiently imminent and causes plaintiffs to suffer concurrent concrete harms such as emotional distress or resources expended to mitigate the risk of identity theft. *Id.* at 152, 155–56. The *Clemens* court set forth three factors to consider in weighing whether a data breach plaintiff has plausibly alleged a sufficiently imminent injury: (1) whether the data breach was intentional; (2) whether the data has been misused; and (3) whether the nature of the information accessed in the data breach could subject a plaintiff to the risk of identity theft. *Id.* at 153–54. No single factor is dispositive, and in particular, the *Clemens* court noted that "misuse is not necessarily required." *Id.* at 153.

ECSI does not address whether the Data Breach was intentional. *See generally* ECF Nos. 33, 37. Plaintiffs argue that it was, ECF No. 36 at 6, and the Court agrees. Specifically, the CAC

alleges that beginning on October 29, 2023, cybercriminals exploited a vulnerability on ECSI's website in a "targeted attack designed to acquire Plaintiffs' and Class Members PII," and that they were successful in doing so. ECF No. 30 ¶¶ 37–38, 42. ECSI became aware of the attack on February 12, 2024, "when it noticed an 'unusually high volume' of attempts to access" the portion of ECSI's website storing Plaintiffs' tax forms that contained their PII. *Id.* ¶ 39. These facts plausibly allege that ECSI was the target of an intentional attack to gain access to Plaintiffs' PII. Thus, this factor weighs in favor of an imminent injury.

Regarding the misuse of Plaintiffs' PII, ECSI argues "Plaintiffs fail to plausibly allege any misuse of information due to the [Data Breach]." ECF No. 33 at 7. Specifically, ECSI contends that the CAC fails to allege "anything about the hacker who stole the information or that there is any evidence the hacker has misused the information or disclosed it to others who could." *Id.* at 8. But as noted above, Plaintiffs Nemiri, Bauer, and Taylor have alleged misuse constituting an actual injury. *See* ECF No. 30 ¶¶ 125, 134 (alleging that Plaintiffs Nemiri and Bauer had unauthorized tax returns filed in their name), 152 (alleging that Plaintiff Taylor experienced unauthorized credit inquiries and attempts to open accounts using her PII). And Plaintiff Golec has alleged misuse because her PII was posted on the dark web. ECF No. 30 ¶ 143; *see Clemens*, 48 F.4th at 157 (finding that publication of PII on the dark web was misuse). Additionally, although Plaintiff Hood has not alleged a specific misuse of his PII, the fact that the other Plaintiffs have weighs in his favor. *See McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301 (2d Cir. 2021) (stating that a substantial risk of future injury is more likely where plaintiffs "can show that at least some part of the compromised dataset has been misused—even if plaintiffs' *particular* data subject to the same disclosure incident has not yet been affected"); *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 58 (D.C. Cir. 2019) (making similar observation).

Furthermore, pleading the identity of the cybercriminals behind the attack is not required to establish that the Plaintiffs' PII was misused. *See Tignor v. Dollar Energy Fund, Inc.*, 745 F. Supp. 3d 189, 201 (W.D. Pa. 2024) (Stickman, J.) (stating that "whoever is behind the Data Breach" had put plaintiff's PII in a position to be misused). Accordingly, this factor weighs in favor of an imminent injury.

As for the nature of the information accessed in the Data Breach, the CAC alleges that cybercriminals obtained Plaintiffs' confidential tax forms and PII contained therein, including the Plaintiffs' names, financial information, Social Security numbers, and Tax Identification numbers. ECF No. 30 ¶¶ 6, 40. This is the type of information "more likely to create a risk of identity theft or fraud." *Clemens*, 48 F.14th at 154. ECSI argues that the PII disclosed in this case "is more limited than [the PII] at issue in other data breach cases where courts have determined that the plaintiffs lacked standing." ECF No. 33 at 8–9 (citing *Reilly v. Ceridian Corp.*, 664 F.3d 38, 40, 43, 46 (3d Cir. 2011); *In re Retreat Behav. Health LLC*, No. 5:23-CV-00026-MRP, 2024 WL 1016368, at *1, 3 (E.D. Pa. Mar. 7, 2024)). But the cases ECSI relies on concluded that plaintiffs lacked standing based on other factors, not that the nature of the stolen information was insufficiently sensitive. *See Reilly*, 664 F.3d at 42 (finding no standing where injury alleged was hypothetical); *In re Retreat*, 2024 WL 1016368, at *3 (same). Accordingly, this factor also weighs in favor of there being an imminent harm.

Finally, Plaintiffs have plausibly alleged a "separate concrete harm" related to their anticipated future injuries. *Clemens*, 48 F.4th at 155. Specifically, each Plaintiff alleges they suffered emotional distress and the costs of continued monitoring and protection of their financial accounts. *See* ECF No. 30 ¶¶ 118–19, 127–28, 136–37, 145–46, 154–55. The *Clemens* court specifically cited these injuries as sufficiently concrete to convey standing. 48 F.4th at 155–56.

11

For all of the foregoing reasons, the Court concludes that all five Plaintiffs have plausibly alleged injuries in fact.

### 2.    Plaintiffs Have Plausibly Alleged Traceability

To establish Article III standing, Plaintiffs must also allege that their injuries were "caused by the challenged action of the defendant as opposed to an independent action of a third party." *Clemens*, 48 F.4th at 158 (citing *Lujan*, 504 U.S. at 560).  At the motion to dismiss stage, this is a "low bar."  *Richard Roe W.M. v. Devereux Found.*, 650 F. Supp. 3d 319, 333 (E.D. Pa. 2023). While the Third Circuit has not yet "articulate[d] a single standard for establishing this 'causal relationship,'" it has held that both but-for causation and concurrent causation are sufficient. *Clemens*, 48 F.4th at 158 (citing cases).

ECSI argues that Plaintiffs cannot establish traceability because they rely on mere temporal proximity between the Data Breach and the alleged misuse of their PII.  *See* ECF No. 33 at 5–7. ECSI further asserts that because Plaintiffs "appear to concede that they have suffered '*multiple* prior instances of identity theft,'" attributing the misuse of their PII to the Data Breach, as opposed to whatever disclosures enabled prior instances of identity theft, is pure speculation. *Id.* (citing ECF No. 30 ¶¶ 126, 135, 144, 153).  In response, Plaintiffs argue that they have done enough at this early stage of these proceedings to plausibly allege that their injuries are fairly traceable to the Data Breach.  ECF No. 36 at 8–10.  The Court agrees with the Plaintiffs.

The CAC alleges that:  (1) ECSI was in possession of tax forms containing Plaintiffs' PII, ECF No. 30 ¶¶ 5–6, 21–22;  (2) the nature of Plaintiffs' PII was such that it could be used for identity theft, *id.* ¶¶ 62–74;  (3) Plaintiffs' tax forms were accessed by cybercriminals in the Data Breach, *id.* ¶ 6;  (4) but-for ECSI's failure to implement measures to protect Plaintiffs' tax forms, Plaintiffs' PII would not have been accessed by cybercriminals, *id.* ¶¶ 7, 179;  and (v) as a result

of their PII being compromised in the Data Breach, Plaintiffs have either already suffered or stand to imminently suffer identity theft, *id.* ¶¶ 116–119, 125–128, 134–137, 143–146, 151–155. These allegations are sufficient at the pleading stage to establish traceability. *See Enslin*, 136 F. Supp. at 667–68 (finding traceability where plaintiff alleged that his PII was stolen from his employer and subsequently used to perpetrate identity theft); *In re Am. Fin. Res., Inc. Data Breach Litig.*, No. 2:22-CV-01757-MCA-JSA, 2023 WL 3963804, at *5 (D.N.J. Mar. 29, 2023) ("At this early stage, that Plaintiffs have alleged that the publishing of PII on the dark web, unauthorized credit charges, and attempts at identity theft occurred as a result of the Defendant's failure to secure their PII is sufficient."). ECSI's argument that Plaintiffs cannot establish traceability because they "suffered 'multiple prior instances of identity theft,'" ECF No. 33 at 6, is best decided after discovery and the development of a factual record. *See Gaddy v. Long & Foster Companies, Inc.*, No. CV 21-2396 (RBK)(EAP), 2023 WL 1926654, at *8 (D.N.J. Feb. 10, 2023) ("Although [plaintiff] may not have proof right now that hackers accessed her PII during the Data Breach, it is not her obligation at the pleading stage to prove the allegations."); *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 481 (3d Cir. 2018) (finding traceability at the pleading stage where plaintiffs alleged that their injuries were "caused" by the defendant's unlawful corporate policies).

Accordingly, the Court finds that Plaintiffs have established Article III standing.[3]

## B. Plaintiffs Have Stated a Plausible Claim for Negligence

Plaintiffs' First Cause of Action is a state law claim for negligence. ECF No. 30 ¶¶ 168–81. At the outset, the Court must determine which state's law governs Plaintiffs' negligence claim.

---

[3] While the parties have not addressed it, Plaintiffs have satisfied the third element of standing—redressability—because they seek damages. ECF No. 30 at 52; *see Clemens*, 48 F.4th at 158 ("[I]njuries caused by a data breach are easily and precisely compensable with a monetary award.") (quotation omitted).

Ordinarily, a federal court sitting in diversity applies the substantive law of the forum state.[4] *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007). Here, that would merit the application of Pennsylvania law. Because both parties have argued for the application of Pennsylvania substantive law, the Court will apply Pennsylvania law in this instance.[5] *See* ECF No. 33 at 10 (arguing that Pennsylvania law applies to Plaintiffs' claims); ECF No. 36 at 20 n.7 ("Given the complexities of addressing choice of law in the data breach context, the Court should apply the law of the forum at this stage."); *Galaxy Int'l, Inc. v. Merchants Distribs., LLC*, No. 22-302, 2023 WL 4949864, at *2 (W.D. Pa. Aug. 3, 2023) (Fischer, J.) (citing *Schiavone Constr. Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984)) ("[T]he parties do not dispute that Pennsylvania law applies to this case, and the Court need not engage in a choice of law analysis.").

To state a negligence claim under Pennsylvania law, a plaintiff must allege that "(1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred." *Grove v. Port Auth. of Allegheny Cnty.*, 218 A.3d 877, 889 (Pa. 2019). Furthermore, a plaintiff may allege the first two elements—duty and breach—by establishing that a defendant was negligent *per se*. *Minnich v. Yost*, 817 A.2d 538, 541 (Pa. Super. 2003). A defendant is negligent *per se* where it "violate[s] an applicable statute designed to prevent a public harm." *Id.*

Here, ECSI argues that Plaintiffs cannot establish the third or fourth elements of a negligence claim. ECF No. 33 at 10–12. Specifically, ECSI claims that Plaintiffs have failed to "plausibly allege that any misuse resulted from the" Data Breach, *id.* at 11, and that under

---

[4] Jurisdiction in this case is brought pursuant to CAFA, which "grants federal diversity jurisdiction over class actions" when the required criteria are met. *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 182 (3d Cir. 2023).

[5] For the same reason, the Court will apply Pennsylvania substantive law to all of Plaintiffs' state law claims.

Pennsylvania law, Plaintiffs cannot recover damages for an increased risk of harm, time spent mitigating the effects of the Data Breach, emotional distress (in the absence of a physical injury), the loss in value of their PII, or the loss of the benefit of their bargain with ECSI, *id.* at 11–12. Additionally, ECSI argues that Plaintiffs cannot rely on a negligence *per se* theory of liability based on the ECSI's alleged violation of the Federal Trade Commission Act ("FTC Act") because that statute was enacted to protect the public at large, and not any particular group of individuals.[6] *Id.* at 12–14. In response, Plaintiffs argue that causation should not be decided at this procedural juncture, but in any event, they have plausibly alleged causation at the pleading stage. ECF No. 36 at 10–11. Plaintiffs further argue that they have stated a plausible claim for all of their alleged damages. *Id.* at 12–14. And finally, Plaintiffs assert that their negligence *per se* theory is viable. *Id.* at 14.

### 1.    Plaintiffs Have Plausibly Alleged Causation

Under Pennsylvania law, causation for negligence requires a showing that the breach of the defendant's duty was both the actual and proximate cause of the plaintiff's injury. *Eckroth v. Penn. Elec., Inc.*, 12 A.3d 422, 427 (Pa. Super. 2010). Actual cause is the equivalent of "but for" causation. *Kalgren v. Huber*, No. CIV A 32005-7, 2007 WL 674605, at *4 (W.D. Pa. Mar. 1, 2007) (Gibson, J.) (citing *Summers v. Giant Food Stores, Inc.*, 743 A.2d 498, 509 (Pa. Super. 1999)). "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Eckroth*, 12 A.3d at 428 (citation omitted). The relevant inquiry for proximate causation is whether "the alleged negligence was so remote that as a matter

---

[6] Plaintiffs also allege a common law theory of duty and breach, and ECSI does not challenge that theory. *See* ECF No. 30 ¶¶ 172–74, 178;  ECF No. 33 at 10–14.

of law, the defendant cannot be held legally responsible for the subsequent harm." *Id.* (citation omitted).

The Court has already concluded that Plaintiffs have plausibly alleged actual causation. *See* Part III.A.2, *supra*. The instant dispute is thus whether Plaintiffs have plausibly alleged proximate causation. At this early stage of these proceedings, the same allegations discussed in Part III.A.2 also plausibly allege proximate cause. *See Opris v. Sincera Reprod. Med.*, No. CV 21-3072, 2022 WL 1639417, at *6 (E.D. Pa. May 24, 2022) (finding proximate causation at the pleading stage from "allegations that Plaintiffs provided Defendant with their PII and PHI, and that because of the breach, their information was available and thereafter placed on a ransomware website on the dark web"); *Roma*, 2024 WL 3678984 (similar); *see also In re Am. Med. Collection Agency*, 2021 WL 5937742, at *15 (noting that "causation is ordinarily a question of fact to be decided by the jury," and concluding that plaintiffs had sufficiently alleged proximate cause at the pleading stage).[7]

### 2.  Plaintiffs Have Plausibly Alleged Damages Attributable to the Data Breach

At a minimum, Plaintiffs have alleged a plausible claim for mitigation damages. Specifically, the CAC alleges that each Plaintiff has suffered damages including "the cost of indefinite monitoring and protection of" their financial accounts. ECF No. 30 ¶¶ 119, 128, 137, 146, 155. It also alleges that Plaintiffs have incurred costs associated with requesting credit freezes, detecting and preventing identity theft, and purchasing credit monitoring and identity theft

---

[7] ECSI's attempt to distinguish the cases cited by Plaintiffs on the grounds that "the plaintiffs in those cases did not plead—like Plaintiffs here—they had already suffered identity theft *before* the data breach at issue," ECF No. 37 at 2, is ill-founded. The CAC does not plead that Plaintiffs suffered identity theft before the Data Breach. *See generally* ECF No. 30. That is an inference that ECSI would have the Court draw from the allegation that "[i]n light of the multiple prior instances of identity theft and the continued risk of the unauthorized use of" their PII, Plaintiffs must now devote time and resources to remain vigilant to future attempts at identity theft." ECF No. 30 ¶¶ 126, 135, 144, 153. The Court declines to draw inferences against Plaintiffs at the pleading stage. *See Phillips*, 515 F.3d at 228.

protection services.  *Id.* ¶ 180.  These injuries "have an established pedigree in tort cases arising out of data breaches."  *Roma*, 2024 WL 3678984, at *9 (declining to dismiss negligence claim where data breach plaintiffs alleged mitigation damages attributable to actual and imminent identity theft);  *Tignor*, 745 F. Supp. 3d at 203 (same);  *Opris*, 2022 WL 1639417, at *7 (same).

Having found that the CAC plausibly alleges mitigation damages, the Court defers consideration of whether Plaintiffs' other claimed damages are cognizable.  *See In re Am. Med. Collection Agency*, 2021 WL 5937742, at *16 n.29 (deferring consideration of whether all of the plaintiffs' damages were cognizable at the pleading stage after determining that at least some of them were).

### 3.    The Court Will Defer Consideration of Whether Plaintiffs May Proceed on a Negligence *Per Se* Theory Under the FTC Act

Plaintiffs allege that ECSI owed them a common law duty to take reasonable care in safeguarding their PII, as well as a similar duty under Section 5 of the FTC Act.  ECF No. 30 ¶¶ 172–76.  Plaintiffs further allege that ECSI violated those duties.  *See id.* ¶¶ 177–78.  ECSI argues that Plaintiffs cannot rely on a purported violation of the FTC Act to establish that ECSI was negligent *per se.*  ECF No. 33 at 12–14.  But because ECSI has not challenged Plaintiffs' common law theory of duty and breach, *see generally* ECF Nos. 33, 37, the Court need not decide at this time whether a violation of the FTC Act can support a negligence *per se* theory of liability. Accordingly, the Court defers consideration of that issue to a more appropriate time.  *See Opris*, 2022 WL 1639417, at *9–10 (deferring consideration of the same issue until the summary judgment stage and citing other cases doing the same).

For all of the foregoing reasons, the Court will not dismiss Plaintiffs' negligence claim.

**C.     Plaintiffs Fail to State a Plausible Claim for Breach of Implied Contract**

Plaintiffs' Second Cause of Action is a state law claim for breach of implied contract.  ECF No. 30 ¶¶ 182–92.  "The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written." *Enslin*, 136 F. Supp. 3d at 675 (citing *Highland Sewer & Water Auth. v. Forest Hills Mun. Auth.*, 797 A.2d 385, 390 (Pa. Commw. 2002)).  "For a breach of contract claim, Pennsylvania law requires '(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages.'"  *Tignor*, 745 F. Supp. 3d at 204 (quoting *CoreStates Energy, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)).  To establish the first element— the existence of a contract—a plaintiff must plausibly allege (1) the parties' objective manifestations of intent to be bound by an agreement, (2) the agreement had sufficiently definite terms, and (3) mutuality of consideration.  *See Szymanski v. Sacchetta*, No. 2:10-CV-02336-JD, 2012 WL 246249, at *4 (E.D. Pa. Jan. 26, 2012) (citing *Johnston the Florist, Inc. v. Tedco Constr. Corp.*, 657 A.2d 511, 516 (Pa. Super. 1995)).  Thus, "[m]utual assent is an essential element of an implied contract claim."  *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *19.

ECSI argues that Plaintiffs' breach of implied contract claim fails because Plaintiffs have not established the existence of a contract.  ECF No. 14 at 14–18.  Specifically, ECSI argues that Plaintiffs have not established that ECSI and Plaintiffs had a "meeting of the minds" (*i.e.*, mutual assent) as to a contractual relationship that encompassed a duty to safeguard Plaintiffs' PII.  *Id.* Plaintiffs respond that "as an implicit condition of ECSI receiving their PII, ECSI was obliged and understood that it was" required to safeguard Plaintiffs' PII.  ECF No. 36 at 15.  Plaintiffs further identify what they characterize as "specific representations" from ECSI evidencing that it understood it had an obligation to safeguard Plaintiffs' PII.  *Id.*

The Court agrees with ECSI that the CAC fails to allege mutual assent. While the CAC conclusorily asserts that "[a] meeting of the minds occurred when Plaintiffs and Class Members agreed to, and did, provide their PII and financial information to [ECSI], in exchange for, among other things, the protection of their PII and financial information," ECF No. 30 ¶ 189, the actual facts alleged in the CAC do not plausibly allege any such an understanding. Rather, the CAC alleges that it was the Plaintiffs' universities that provided Plaintiffs' PII to ECSI, not the Plaintiffs themselves. *See, e.g.*, *id.* ¶¶ 20 ("In order to provide [its TaxSelect service,] ECSI collects and processes PII from its University Clients and generates tax forms, including Form 1098s for students and borrowers."), 115 ("On information and belief, [Rennselaer Polytechnic Institute ("RPI")] provided Plaintiff Hood's PII and financial account information to [ECSI] in connection with the services RPI provides to Plaintiff Hood."). And Plaintiffs allege that they provided their PII to their universities in exchange for educational services, not in exchange for anything offered by ECSI. *See, e.g.*, *id.* ¶ 114 ("For purposes of receiving educational services from RPI, Plaintiff Hood was required to provide his highly sensitive information, including his PII and financial account information to RPI and/or Defendant."). These allegations are insufficient to plead a meeting of the minds between ECSI and Plaintiffs.[8] *See In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, 748 F. Supp. 3d 262, 274 (E.D. Pa. 2024) (finding no meeting of the minds sufficient to state a claim for breach of implied contract based on similar allegations).

---

[8] For substantially the same reasons, the CAC does not plausibly allege consideration supporting an implied contract between ECSI and Plaintiffs. "Consideration consists of a benefit to the promisor or a detriment to the promisee" which is meant to induce the promisor's performance. *Tignor*, 745 F. Supp. 3d at 204 (quoting *Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003)). Here, the CAC alleges that Plaintiffs provided their PII to their universities in exchange for educational services, and that ECSI provided tax preparation services to those universities. *See, e.g.*, ECF No. 30 ¶¶ 20, 28–29, 114–15. Those allegations do not plausibly allege an exchange of consideration between Plaintiffs and ECSI. *See In re NCB Mgmt. Servs.*, 748 F. Supp. 3d at 274 (finding no consideration where the "plaintiffs provided their PII to the banks, not to NCB," and NCB "provided its services to the banks, not the plaintiffs"); *see also Tignor*, 745 F. Supp. 3d at 204–05 (dismissing breach of implied contract claim for lack of consideration).

Moreover, while Plaintiffs claim that ECSI made "specific representations concerning the safeguarding of [Plaintiffs'] PII," ECF No. 36 at 15, those representations do not appear to sufficiently show any mutual understanding that ECSI would do so. First, Plaintiffs cite a privacy notice available on ECSI's website. ECF No. 30 ¶ 26; ECF No. 33-3.[9] The CAC alleges that this notice contains a representation that ECSI "'take[s] the security and privacy of personal information seriously' and will maintain administrative, technical and physical safeguards designed to protect the personal information you provide against accidental, unlawful or unauthorized destruction, loss, alteration, access, disclosure or use." ECF No. 30 ¶ 26. That is accurate, but by its own terms, the notice does not encompass the type of sensitive PII at issue in this case. *See* ECF No. 33-3 at 1–2 (not mentioning Social Security numbers, Tax Identification numbers, or financial information in the definition of "personal information," and noting that "this Notice does <u>not</u> describe our processing of borrower personal information in connection with our provision of student loan processing services"). More importantly, the notice expressly states that ECSI "cannot guarantee the security of any data transmitted through the internet, including [on ECSI's website.]") *Id.* at 6. Plaintiffs also rely on a second privacy notice posted elsewhere on ECSI's website. ECF No. 30 ¶ 27. The CAC alleges that this second notice "promises students and borrowers that ECSI will 'protect [their] personal information from unauthorized access and use' by using security measures that comply with federal law." *Id.* But "[s]tatements of Defendants' intent to follow federal law do not support an independent cause of action for breach of implied contract." *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *20.

---

[9] ECSI has attached this policy as Exhibit C to its Motion to Dismiss, ECF No. 33-3, and the Court may properly consider it at this stage. *See Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) ("Courts may also consider documents integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (quotation omitted).

Finally, Plaintiffs allege that by requiring students to submit PII on a form W-9S, ECSI impliedly promised to safeguard that PII. *See* ECF No. 30 ¶ 25. But the CAC does not allege that any of the named Plaintiffs actually submitted a form W-9S to ECSI. In fact, the CAC does not allege that any of the named Plaintiffs received, reviewed, or relied on *any* of the documents they allege contained "specific representations" to safeguard their PII. *See generally* ECF No. 30. The closest the CAC gets to such an allegation is that "[o]n information and belief," ECSI obtained students' and borrowers' PII by requesting that they complete and sign a form W-9S, and that students and borrowers are required to create a profile on ECSI's website "to obtain forms and access information concerning the individual's student loans." *Id.* ¶¶ 24–27. Pleading on information and belief is only proper "when the facts at issue are peculiarly within the defendant's possession," *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015), and here, whether Plaintiffs reviewed or relied on the privacy notices or submitted a form W-9S are facts particularly within their possession, not ECSI's. Absent such factual allegations, the CAC fails to allege a mutual understanding that ECSI would safeguard Plaintiffs' PII. *See In re Am. Med. Collection Agency*, 2021 WL 5937742, at *20 n.37 ("[O]nly three Plaintiffs . . . allege that they 'reviewed and agreed to' any of the Defendants' policies before obtaining services. . . . The remaining Plaintiffs could not have plausibly assented to an implied contract based on policies they had never read.").

For all of the foregoing reasons, Plaintiffs have failed to state a plausible claim for breach of implied contract.

### D.    Plaintiffs Have Stated a Plausible Claim for Unjust Enrichment

Plaintiffs' Third Cause of Action is a state law claim for unjust enrichment. ECF No. 30 ¶¶ 193–203. To make out an unjust enrichment claim, a plaintiff must allege "(1) that the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated such benefit; and (3) the

defendant accepted and retained such benefit under circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." *Tignor*, 745 F. Supp. 3d at 205 (citing *Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 628 (Pa. Super. 2019)). In the data breach context, "[c]ourts have found PII valuable to a business that commoditizes it or receives an independent pecuniary benefit from holding the PII." *In re NCB Mgmt. Servs.*, 748 F. Supp. 3d at 278. Conversely, "where the complaint lacks factual allegations showing how a defendant 'reaped monetary benefits or otherwise profited' from holding plaintiffs' PII, 'vague allegations that [the defendant] collected information for commercial gain' are not sufficient to state a claim for unjust enrichment." *Id.* (quoting *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *18).

Here, ECSI argues that Plaintiffs have failed to allege facts satisfying the first and second element of their unjust enrichment claim because the CAC does not identify what benefit ECSI received from its possession of Plaintiffs' PII. ECF No. 33 at 18–19. ECSI further argues that Plaintiffs have not satisfied the third element of their claim because nothing about ECSI's retention of their PII was unjust. *Id.* In response, Plaintiffs argue that in providing their PII to ECSI they conferred a benefit on ECSI because it could not operate its business without Plaintiffs' PII, and that collecting and maintaining Plaintiffs' PII as an integral part of its business while failing to adequately safeguard that PII was unjust under the circumstances. ECF No. 36 at 17–19.

Plaintiffs have done enough to plausibly allege an unjust enrichment claim at the pleading stage. As an initial matter, the fact that Plaintiffs only indirectly provided their PII to ECSI by first providing it to their universities is not fatal to their unjust enrichment claim. *See In re NCB Mgmt. Servs.*, 748 F. Supp. 3d at 278–79 ("The plaintiffs are correct they are not required to plead that they directly conferred a benefit on NCB."). And the CAC sufficiently alleges that Plaintiffs conferred a benefit on ECSI. Plaintiffs allege that ECSI collects and stores individuals' PII "[i]n

order to provide services for its University Clients." ECF No. 30 ¶ 3. Specifically, ECSI uses students' PII to generate tax forms for university clients who purchase its "TaxSelect" service. *Id.* ¶ 20. Over 1,000 clients use ECSI's TaxSelect service, and ECSI cannot provide that service without collecting, storing, and processing student PII. *Id.* ¶¶ 28–29. These allegations are sufficient at the pleading stage to demonstrate that ECSI derived a monetary benefit specifically from the retention and use of Plaintiffs' PII. *Compare In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 413 (E.D. Va. 2020) (declining to dismiss unjust enrichment claim where plaintiff alleged facts demonstrating that defendant "profited from its storage and retention of Plaintiffs' PII"), *with Tignor*, 745 F. Supp. 3d at 206 (dismissing unjust enrichment claim where the complaint alleged no facts supporting the contention that defendant could not perform business activities without plaintiff's PII), *and In re NCB Mgmt. Servs.*, 748 F. Supp. 3d at 278–79 (similar). Furthermore, at the pleading stage, the CAC plausibly alleges that it would be unjust for ECSI to "retain the benefit of the [PII] (and any benefits received therefrom), while leaving the [Plaintiffs] to live with the consequences" of not safeguarding that PII. *In re Cap. One. Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 412.

Accordingly, the Court will not dismiss Plaintiffs' Third Cause of Action for unjust enrichment at this juncture.

### E.    Plaintiffs Have Failed to State a Plausible Claim for Invasion of Privacy

Plaintiffs' Fourth Cause of Action is a state law claim for invasion of privacy. ECF No. 30 ¶¶ 204–13. "An action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 259–60 (3d Cir. 2004) (citing *Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1383 (1984)). The CAC does not specify which privacy tort Plaintiffs allege, but only intrusion upon seclusion appears applicable

to this case. To make out a claim for intrusion upon seclusion, "a plaintiff must show that the intrusion was (1) intentional; (2) upon the solitude or seclusion of the plaintiff, or his private affairs or concerns; [] (3) substantial; and (4) highly offensive." *Pacitti v. Durr*, No. CIV.A. 05-317, 2008 WL 793875, at *25 (W.D. Pa. Mar. 24, 2008) (Conti, J.) (citing *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1186–87 (Pa. Super. 1988), *aff'd*, 310 F. App'x 526 (3d Cir. 2009)).

ECSI argues that Plaintiffs' invasion of privacy claim fails because "Plaintiffs do not allege that ECSI *intentionally* disclosed their information to anyone—rather, they allege ECSI 'failed to *protect*' it." ECF No. 33 at 19 (citing ECF No. 30 ¶ 207). Plaintiffs respond that ECSI intentionally designed its website "in a way that enabled [unauthorized] individuals to easily access and request tax forms." ECF No. 36 at 19. Plaintiffs' argument is unpersuasive. The United States District Court for the Eastern District of Pennsylvania rejected a substantially identical argument in *Roma v. Prospect Medical Holdings, Inc.* As the court there noted, the intentional "configuring" of data security systems "is not the conduct that must be proven to be intentional in an invasion of privacy claim." *Roma*, 2024 WL 3678984, at *13. Rather, "[t]he defendant's state of mind with respect to the 'intru[sion]' is what matters." *Id.* (citing *Kline*, 386 F.3d at 260). Here, the CAC alleges that, at most, ECSI negligently allowed cybercriminals to access Plaintiffs' PII. *See, e.g.*, ECF No. 30 ¶ 33 ("ECSI failed to implement reasonable data security measures to protect the information with which it was entrusted."). That is insufficient to state a claim for intrusion upon seclusion. *See Roma*, 2024 WL 3678984, at *12–13.

Accordingly, the Court will dismiss Plaintiffs' invasion of privacy claim.

## F. Dismissal of Plaintiffs' Declaratory Judgment Claim is Premature

Plaintiffs' Fifth Cause of Action is a claim for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201. ECF No. 30 ¶¶ 214–21. That statute "provides

that a court '*may* declare the rights . . . of any interested party,' and contemplates that district courts will exercise discretion in determining whether to entertain such actions." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000) (quoting 28 U.S.C. § 2201(a)). In considering whether to entertain a claim for a declaratory judgment, courts consider "(1) the likelihood that the declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies." *Opris*, 2022 WL 1639417, at \*14. "Courts generally decline granting declaratory relief when the claim for declaratory judgment is entirely duplicative of another claim. . . ." *In re Wawa, Inc. Data Sec. Litig.*, No. CV 19-6019, 2021 WL 1818494, at \*8 (E.D. Pa. May 6, 2021) (quoting *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 233 (E.D. Pa. 2019)). But "[w]here there is some overlap between plaintiffs' declaratory judgment claim and other substantive claims, courts may refuse to dismiss the declaratory judgment claim if the plaintiffs' remaining claims have not been fully developed . . . [and] the Court cannot fully evaluate the extent of the overlap. . . ." *Baker v. Deutschland GmbH*, 240 F. Supp. 3d 341, 350 (M.D. Pa. 2016) (cleaned up).

Here, the CAC seeks a declaration that "ECSI owes a legal duty to secure consumers' PII and to timely notify consumers of a data breach under the common law and Section 5 of the FTC Act," and that "ECSI continues to breach this legal duty by failing to employ reasonable data security measures to safeguard Plaintiffs' and Class Members' PII still in its possession." ECF No. 30 ¶ 217. ECSI argues that Plaintiffs' declaratory judgment claim should be dismissed because it is entirely duplicative of their negligence claim. ECF No. 33 at 20. Plaintiffs respond that their declaratory judgment claim seeks forward-looking relief, while their negligence claim seeks damages for past negligence, and therefore the two claims are not duplicative. ECF No. 36 at 20.

On balance, the Court finds that dismissal of Plaintiffs' claim for declaratory judgment would prematurely "curtail [the Court's] broad equity powers to fashion the most complete relief possible." *In re Wawa*, 2021 WL 1818494, at *8 (declining to dismiss declaratory judgment claim at the motion to dismiss stage); *see also Opris*, 2022 WL 1639417, at *14 ("Whether the Court should issue such a declaration will depend on the outcome of Plaintiff's substantive claims . . . . At the motion to dismiss stage, these claims have not been fully developed. Thus, dismissal of Plaintiffs' claim under the DJA would be premature.").

Accordingly, the Court will not dismiss Plaintiffs' Fifth Cause of Action at this juncture.

## IV.    Conclusion

For the foregoing reasons, ECSI's Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**, as set forth more fully in the accompanying Order.

DATED this 2nd day of May, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

26