IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOEL HOOD, ELIAS NEMIRI, GIDEON BAUER, ELIZABETH GOLEC, ALEXYS TAYLOR, ELIAS NEMIRI, and GIDEON BAUERS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>        v.<br><br>EDUCATIONAL COMPUTER SYSTEMS, INC.,<br><br>Defendant. | 2:24-CV-00666-CCW |

## **OPINION**

Before the Court is an Unopposed Motion for Preliminary Approval of a class action settlement between Plaintiffs Joel Hood, Elizabeth Golec, Alexys Taylor, Elias Nemiri, and Gideon Bauers, and Defendant Educational Computer Systems, Inc. ECF No. 59. For the reasons that follow, the Motion will be GRANTED.

## I.     Background

On May 3, 2024, Mr. Hood filed a class action complaint in this Court, asserting claims against Defendant Educational Computer Systems, Inc. including negligence, negligence per se under the FTC Act, 15 U.S.C. § 45, breach of implied contract, unjust enrichment, and invasion of privacy. ECF No. 1 at 21–29. Educational Computer Systems, Inc. ("ECSI") is a student loan and tax servicing vendor that provides services to universities in the United States. *Id.* ¶ 2. The claims here center on a data breach that occurred between October 29, 2023 and February 12, 2024 at ECSI. *Id.* ¶ 4. Mr. Hood and other class members are current and former students of academic institutions that use ECSI's services. Mr. Hood alleges that ECSI failed to safeguard its clients' and their students' personally identifiable information ("PII") stored within ECSI's information

network. *Id.* ¶¶ 6–9. Mr. Hood and other current and former students of ECSI's clients' PII, such as full name, address, Social Security number, and other personal and financial information, was stored on ECSI's systems. *Id.* ¶¶ 2–3. Mr. Hood alleges that ECSI "failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security[,]" resulting in a cyberattack and data breach that included Mr. Hood and others' PII. *Id.* ¶ 22. Thus, Mr. Hood contends that ECSI's alleged failure to take sufficient precautions and the subsequent data breach that occurred constitutes, *inter alia*, negligence and negligence per se under the FTC Act. *Id.* at 21–24. On September 13, 2024, Plaintiffs Joel Hood, Elias Nemiri, Gideon Bauer, Elizabeth Golec, and Alexys Taylor filed the operative Consolidated Amended Class Action Complaint, alleging substantially similar facts and claims. ECF No. 30. On May 2, 2025, the Court granted in part and denied in part ECSI's motion to dismiss, dismissing Plaintiffs' claims for breach of implied contract and invasion of privacy, but permitting the remainder of the claims to proceed. ECF Nos. 38, 39. ECSI filed its answer to the remaining claims, and the parties proceeded with discovery. ECF Nos. 42, 47.

On October 9, 2025, following a mediation session before Jill Sperber, Esq., the parties filed a notice advising the Court that they had reached a tentative settlement agreement. ECF No. 52. On January 16, 2026, Plaintiffs filed the present Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 59, and a settlement agreement. *See* ECF No. 60-2. The settlement, if approved, would reimburse settlement class members as follows: "Reimbursement of Out-Of-Pocket Losses" of up to $5,000 per person for class members who provide documentation in support of their claims, or an "Alternative Cash Payment" of approximately $100 for class members unable to provide documentation of their losses incurred as a result of the data breach, subject to *pro rata* increase or decrease depending on the total number of approved claims.

ECF No. 60-2 at 15–16.   Remaining funds of checks uncashed after 180 days would be re-distributed to class members who redeemed or cashed their initial payments if sufficient funds exist to distribute payments of at least $5.00 to each recipient;  otherwise, the residual funds would be donated to a *cy pres* recipient mutually agreed upon by the parties and approved by the Court. *Id.* at 19.   Claims would be paid from a settlement fund totaling  $6,500,000. *Id.* at 12.   Under the agreement, class representatives Joel Hood, Elias Nemiri, Gideon Bauer, Elizabeth Golec, and Alexys Taylor would each receive a $2,500 service award. *Id.* at 29.   Additionally, proposed class counsel may apply to the Court for payment of one third of the settlement fund in attorneys' fees. *Id.* at 28–32.   Plaintiffs' Unopposed Motion for Settlement seeks preliminary approval of the settlement under Federal Rule of Civil Procedure 23.   ECF No. 59.

## II.   Standard of Review

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e). Furthermore, where the settlement would bind class members, "the court may approve [the settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2).   Accordingly, "when a district court is presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under Rule 23(e)."  *Torres v. Brandsafway Indus. LLC*, Civ. A. No. 2:21-CV-01771-CCW, 2023 WL 346667, at *1 (W.D. Pa. Jan. 20, 2023) (Wiegand, J.) (quoting *In re NFL Players Concussion Injury Litig.* ("*NFL II*"), 775 F.3d 570, 581 (3d Cir. 2014)).

Courts in the Third Circuit generally follow a two-step process for approval of class settlements.   First, "the parties submit the proposed settlement to the court, which must make 'a

3

preliminary fairness evaluation.'"  *In re NFL Players' Concussion Injury Litig.* ("*NFL I*"), 961 F.

Supp. 2d 708, 713–14 (E.D. Pa. 2014) (quoting *Manual for Complex Litigation (Fourth)* § 21.632

(2004) ("*MCL*")).  At the preliminary approval stage,

> the bar to meet the "fair, reasonable and adequate" standard is lowered, and the court is required to determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."

*NFL I*, 961 F. Supp. 2d at 714 (quoting *Thomas v. NCO Fin. Sys.*, Civ. A. No. 00–5118, 2002 WL

1773035, at *5 (E.D. Pa. 2002)).  According to the United States Court of Appeals for the Third

Circuit, there is "an initial presumption of fairness when the court finds that:  (1) the negotiations

occurred at arm's length;  (2) there was sufficient discovery;  (3) the proponents of the settlement

are experienced in similar litigation;  and (4) only a small fraction of the class objected."  *In re

GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.* ("*GMC*"), 55 F.3d 768, 785 (3d Cir. 1995).[1]

Even though there is a "strong presumption" in favor of class settlements, *Ehrheart v.

Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010), "preliminary approval is not simply a

judicial 'rubber stamp' of the parties' agreement."  *NFL I*, 961 F. Supp. 2d at 714 (citation omitted).

As such, "[j]udicial review must be exacting and thorough," *id.* (quoting *MCL* § 21.61), such that

"[p]reliminary approval is appropriate where the proposed settlement is the result of the parties'

good faith negotiations, there are no obvious deficiencies and the settlement falls within the range

of reason."  *Zimmerman v. Zwicker & Assocs., P.C.*, Civ. A. No. 09-3905 (RMB/JS), 2011 WL

---

[1] At the final approval stage, a more demanding test applies, requiring the Court to examine the so-called *Girsh* factors:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

65912, at *2 (D.N.J. 2011) (citation omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004) ("[I]n cases such as this, where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously, we require district courts to be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." (quoting *GMC*, 55 F.3d at 805)).

If approval of the proposed class settlement is sought contemporaneously with certification of the class—that is, when the parties agree to a class-wide settlement "before the district court has issued a certification order under Rule 23(c)"—then "'the certification hearing and preliminary fairness evaluation can usually be combined.'" *NFL II*, 775 F.3d at 581–82 (quoting *MCL* § 21.632). When doing so,

> [t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* at 582–83 (quoting *MCL* § 21.632) (internal citation omitted). Thus, a district court may provisionally certify a class under Rule 23(e) to facilitate notice to absent class members, fairly and efficiently resolve litigation, and preserve the resources of the court and the litigants, "allow[ing] the parties to forgo a trial on the merits, which often leaves more money for the resolution of claims." *Id.* at 583.

Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," if such notice is justified by a showing that the Court will "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Amendments to Fed. R. Civ. P. 23 took effect on December 1, 2018, clarifying the standards governing preliminary and final approval of class

5

settlements. *Ward v. Flagship Credit Acceptance LLC*, Civ. A. No. 17-2069, 2020 WL 759389, at *4 (E.D. Pa. 2020). As amended, Rule 23(e)(2) requires the Court to consider the following factors in evaluating the fairness, reasonableness, and adequacy of a settlement proposal:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment;  and
>> (iv) any agreement required to be identified under Rule 23(e)(3);  and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Advisory committee notes of the 2018 amendment to Rule 23(e)(2) acknowledge that "each circuit has developed its own vocabulary" and "list[] of factors" for analyzing the fairness, reasonableness, and adequacy of a settlement proposal. Rule 23(e)(2) does not "displace any factor" analyzed by circuit courts prior to the 2018 amendment, "but rather [focuses] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment; *Ward*, 2020 WL 759389, at *5. Thus, the Rule 23(e)(2) factors guide the Circuit Courts' existing analytical frameworks for settlement approval. *Lewis-Abdulhaadi v. Union Sec. Insurance Co.*, Civ. A. No. 21-cv-03805-WB, 2025 WL 1510577, at *2 (E.D. Pa. 2025) ("The factors set forth in Rule 23(e)(2) augment, rather than replace, the traditional factors developed by courts to assess the fairness of a class action settlement."); *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 322 n.2 (3d Cir. 2019) (applying the existing framework within the Third Circuit after the publication of the 2018 amendment).

## III.    Analysis

### A.    The Court Will Preliminarily Approve the Proposed Settlement

For preliminary approval of the proposed settlement, the Court begins with an analysis of the *GMC* factors, which, applied here, demonstrate that the settlement is entitled to a presumption of fairness.  First, the settlement occurred during following multiple mediation sessions before Jill Sperber, Esq., indicating that the settlement is the product of arms-length negotiations.  *See* ECF No. 27 at 5;  *Bredbenner v. Liberty Travel, Inc.*, Civ. A. Nos. 09-905(MF), 09-1248(MF), 09-4587(MF), 2011 WL 1344745, at *10 (D.N.J. 2021) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." (cleaned up)).  Second, the Court concludes that there was sufficient discovery.  Prior to mediation, the parties exchanged discovery, including exchanging multiple sets of interrogatories and requests for production.  ECF No. 60 at 3–4.  This exchange of materials suggests that discovery prior to the settlement agreement was adequate.  Third, counsel for Plaintiffs have significant experience in similar consumer protection cases.  *See id.* at 6; ECF No. 60-5 ¶¶ 5–8.  The final *GMC* factor—the subset of class members who have objected to the settlement—cannot yet be analyzed.  On balance, the *GMC* factors favor preliminary approval, and a presumption of fairness therefore attaches.

The Court further concludes that the settlement is free from any "obvious deficiencies" that indicate that the settlement is not "fair, reasonable, and adequate" under Rule 23(e)(2).  The first two factors under Rule 23(e)(2), (A) and (B), "constitute the 'procedural' aspects of the fairness analysis, and 'look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement.'"  *Ward*, 2020 WL 759389, at *5 (quoting Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment).  Here, under Rule 23(e)(2)(A), the class representatives and proposed class counsel appear to have "adequately represented the class[.]"  Fed. R. Civ. P.

7

23(e)(2)(A).  Proposed class counsel are experienced in similar litigation and have effectively litigated the case to this point, having engaged in discovery as well as independent analysis of the claims and risks of continued litigation.  ECF No. 60 at 3–4.  Further, as discussed above, settlement negotiations appear to have occurred at arm's length as required by Rule 23(e)(2)(B).  Thus, the Court finds no evidence of procedural fairness defects under Rule 23(e)(2)(A) or (B).

The final two factors, Rule 23(e)(2)(C) and (D), guide the "substantive" review of the proposed settlement and require courts to analyze the "relief that the settlement is expected to provide."  Fed. R. Civ. P. 23 advisory committee's note to the 2018 amendment.  The Court concludes that the settlement appears to fall within the range of possible approval.  Plaintiffs aver that the settlement includes a $6,500,000 settlement fund, and allows each settlement class member to submit a claim and receive direct payment.  ECF No. 60 at 13.  In light of the "uncertainty and risks" inherent in this litigation, which Plaintiffs have set forth in their briefing, the settlement appears to be a reasonable resolution of the claim.  *Id.* at 4, 11–12.

The Court notes that the proposed settlement includes a *cy pres* provision under which funds from uncashed claim checks would be redistributed to a *cy pres* recipient if the remaining funds were insufficient to distribute payments of at least $5.00 to each class member who had redeemed an initial payment.  *Id.* at 6.  A district court may approve "a class action settlement agreement that includes a *cy pres* component directing the distribution of excess settlement funds to a third party to be used for a purpose related to the class injury[,]" provided that "the court finds that the settlement, taken as a whole, is 'fair, reasonable, and adequate' from the perspective of the class."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172–173 (3d Cir. 2013).  Here, considering the settlement as a whole and the limited circumstances in which any *cy pres* distribution would

8

occur, the Court concludes that the proposed *cy pres* provision does not weigh against approval of the settlement.

Under Rule 23(e)(2)(C), the Court must also consider the "terms of any proposed award of attorneys' fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). The agreement states that proposed class counsel would be permitted to apply to the Court for payment of up to one third of the settlement fund in attorneys' fees plus "documented costs and expenses[,]" paid from the settlement fund. ECF No. 60 at 14. Attorneys' fees amounting to 33% of the total settlement fund have been held to be "on the higher end for data breach cases[.]" *Holden v. Guardian Analytics, Inc.*, Civ. A. No. 2:230-cv-2115, 2024 WL 2845392, at *11–12 (D.N.J. June 5, 2024) ("[I]n class action settlements of data breach cases, attorney fees awards have generally been between 20% to 30% of the settlement."). Additionally, when attorneys' fees are to be paid through a common settlement fund approved by the court, "Rule 23 imposes an even greater responsibility on the Court to review the fee contracts." *In re Nat'l Football League Players' Concussion Inj. Litig.*, Civ. A. No. 2:12-MD-02323-AB, 2019 WL 13174540, at *17 (E.D. Pa. 2019) (citing *Dunn v. H. K. Porter Co., Inc.*, 602 F.2d 1105, 1109 (3d Cir. 1979)). However, because preliminary approval is a lower standard, *NFL I*, 961 F. Supp. 2d at 714, the Court finds that the proposed attorneys' fees award is not so obviously high as to preclude a preliminary finding of fairness at this stage. *See In re Philadelphia Inquirer Data Sec. Litig.*, Civ. A. No. 24-2106-KSM, 2024 WL 4582881, at *11 (E.D. Pa. 2024) (preliminarily approving an award of approximately 33% of the settlement fund plus reasonable costs in a class action case related to a cyberattack and data breach); *In re Onix Grp., LLC Data Breach Litig.*, Civ A. No. 23-2288-KSM, 2024 WL 3015528, at *11 (E.D. Pa. 2024) (same). Having reviewed the proposed settlement, the

9

Court perceives no other deficiencies that are so obvious as to call into question the fairness, reasonableness, or adequacy of the settlement.

The final Rule 23(e)(2) factor requires courts to analyze whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). All settlement Class Members are eligible to receive the same relief under the settlement agreement. ECF No. 60 at 13. Additionally, there does not appear to be any unduly preferential treatment of the named Plaintiffs, who will each receive a $2,500 service award. *Id.* at 8. That amount is in line with service awards approved or preliminarily approved in comparable cases. *See, e.g.*, *Clemens v. ExecuPharm, Inc.*, Civ. A. No. 20-3383, 2024 WL 4530310, at *5 (E.D. Pa. 2024) (approving a $5,000 service award for the named Plaintiff in a class action case related to a data breach resulting from a cyberattack); *Currie v. Joy Cone*, Civ. A. No. 2:23-CV-00764-CCW, 2024 WL 3157870, at *4 (W.D. Pa. June 25, 2024) (Wiegand, J) (approving a $2,500 service award for the named Plaintiff in a class action related to a data breach from a cyberattack); *Braun v. Philadelphia Inquirer, LLC*, Civ. A. No. 22-cv-4185-JMY, 2025 WL 1314089, at *13 (E.D. Pa. 2025) (approving $5,000 service awards for the named plaintiffs in a class action related to disclosures of class members' online data). Therefore, the Court concludes that the settlement agreement satisfies Fed. R. Civ. P. 23(e)(2)(D).

In sum, there being "no obvious deficiencies" and the settlement "fall[ing] within the range of reason[,]" *Zimmerman*, 2011 WL 65912, at *2, the Court finds for the purposes of preliminary approval that the proposed settlement appears to be "fair, reasonable, and adequate" pursuant to Rule 23(e)(2).

### B.      The Court Will Provisionally Certify the Rule 23 Class

Turning to provisional certification, Plaintiffs seek to represent a Rule 23(b)(3) class of "[a]ll Persons residing within the United States whose Personal Information was potentially accessed in the Security Incident." ECF No. 60 at 4–5. For the following reasons, the Court finds provisional certification appropriate under Rules 23(a) and 23(b)(3).

As to Rule 23(a), Plaintiffs must make a preliminary showing of numerosity, commonality, typicality, and that the representatives of the class will "fairly and adequately protect the interests of the class." Plaintiffs demonstrate numerosity—that the class is so large that joinder would be impracticable—given that he claims that there are 2,577,994 potential class members. ECF No. 60 at 16; *see Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (more than forty members generally sufficient for numerosity); *Currie*, 2024 WL 3157870, at *4 (3,098 members satisfies numerosity). Nor do commonality and typicality pose a significant obstacle at this stage. For commonality, Plaintiffs must show that there are "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), which is the case here because all members share a claim arising out of the same alleged cyberattack and data breach incident. *See Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) ("Commonality does not require perfect identity of questions of law or fact among all class members."). And for typicality, Plaintiffs may show a "strong similarity" between claims and defenses for himself and the class, which he does because all class members are proceeding on the same legal theory with respect to ECSI's alleged negligence in collecting and storing class members' PII. ECF No. 60 at 3, 18; *see In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (internal quotations omitted). Finally, at this stage, there do not appear to be any conflicts of interest and counsel appear to be competent to represent the interests of the class. *See In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218

(M.D. Pa. 2012) ("According to the Third Circuit, Rule 23(a)(4) adequacy is satisfied by showing that (1) Class Counsel is competent and qualified to conduct the litigation;  and (2) class representatives have no conflicts of interests." (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d. Cir. 2007)).  Accordingly, Plaintiffs have made a preliminary showing that they can satisfy the requirements of a class action found in Rule 23(a).

With respect to Rule 23(b)(3), Plaintiffs must make a preliminary showing that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Although similar to the commonality requirement of Rule 23(a), the predominance inquiry is more demanding and a plaintiff must show that "the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127–28 (3d Cir. 2018) (internal citation and quotation omitted).  Here, that standard is satisfied given that a trial would turn on common evidence regarding whether ECSI had a duty to protect class members' PII and whether ECSI's alleged negligence in collecting and storing its employees' and customers' PII breached that duty.  ECF No. 60 at 16–17.  As to superiority, that requirement is met here because resolving the claims of millions of class members in a single case is far fairer and more efficient than doing so in individual actions. *Id.*;  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533–34 (3d Cir. 2004) ("The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  (internal quotation marks omitted)).

Because Plaintiffs have made a preliminary showing that they can satisfy the requirements of Rule 23(a) and 23(b)(3), the Court will provisionally certify a class of "[a]ll Persons residing

within the United States whose Personal Information was potentially accessed in the Security Incident." ECF No. 60 at 4–5.

### C.    The Proposed Notice is Reasonable

Finally, the Court considers the parties' plan for the dissemination of notice. Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"  Where, as here, the class is to be certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Under Rule 23, such notice

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*  After reviewing the materials submitted by Plaintiffs, the Court finds that Plaintiffs' notice plan complies with Rule 23 and will order that notice be given consistent with the notice plan set forth in the settlement agreement.

## IV.    Conclusion

For the foregoing reasons, the Court will GRANT Plaintiffs' Motion and enter an order: (1) preliminarily approving the settlement;  (2) provisionally certifying the class for settlement purposes only;  (3) directing notice to be given consistent with Plaintiffs' notice plan;  (4) appointing Nicholas A. Colella of Lynch Carpenter LLP and Nickolas J. Hagman of Cafferty Clobes Meriwether & Sprengel LLP as class counsel;  (5) adopting the opt-out and objections procedures set forth in the settlement;  and (6) setting a fairness hearing and associated deadlines.

DATED this 5th day of August, 2026.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record